## Charles Werner v. Trautwein & Wolters.

### Decided February 7, 1901.

**1.—Master and Servant—Injury to Servant—Authority of Fellow-Servant.**

The master is not liable for injuries to a servant while engaged in work not in the course of his employment, and which he has undertaken at the call for assistance of a fellow-servant, unless the act of the latter in calling for such assistance was authorized by the master.

**2.—Same—Volunteer—Minor—Dangerous Machinery.**

Where a boy of 16 years was employed to do certain work near a sotton gin, which work was not dangerous in character, and at a time when he was unoccupied a fellow servant, without the knowledge of the master or authority to do so, called the boy, without warning him of the danger, to assist in cleaning a gin stand then in operation, a service not belonging to the work assigned to the boy, who was injured by the saws of the gin, the master was not liable therefor, although then in actual control and only a few feet distant from the other parties at the time.

Appeal from DeWitt. Tried below before Hon. James C. Wilson.

*Kleburg, Grimes & Baker, L. C. Grothaus,* and *Geo. C. Altgelt,* for appellant.

*Patton & Ellis* and *A. B. Davidson,* for appellees.

GILL, Associate Justice.—This action was brought by the appellant Charles Werner against the partnership of Trautwein & Wolters, appellees, to recover damages for personal injuries inflicted upon his minor

son, Hans Werner, in a cotton gin owned and operated by appellees. A trial by jury resulted in a verdict and judgment for appellees.

Plaintiff alleges that on or about August 22, 1898, defendants, by parol contract with plaintiff, engaged plaintiff's minor son, Hans Werner, to count, mark, weigh, assort, and separate the bales of cotton ginned at defendants' round bale press. That it was understood between plaintiff and defendants that Hans Werner was at no time and under no circumstances to be employed to work at or about gin stands or other dangerous machinery, said Hans being inexperienced and without training and being a minor. That on or about October 14, 1898, defendants, in violation of said contract, and fully cognizant of the minority and inexperience of said Hans Werner, without the consent of the plaintiff, and without the knowledge of plaintiff, by and through E. Gabitsch, a duly authorized agent of defendant, who was acting within the scope of his apparent authority, ordered and directed the said Hans Werner to clean a gin stand and feed box in defendants' gin. That said order was given by said Gabitsch while he was acting within the apparent scope of his authority, and was given to said Hans in the presence and hearing of E. Wolters, one of the defendants, and was given while the machinery was in full operation. That Hans complied with said direction and order, and in the presence of said Wolters proceeded to do the labor directed. That said labor was performed in the presence and under the direction of said Wolters, and of his said agent Gabitsch, and was exceedingly dangerous, and that said Hans did not know its dangers, and that he was not warned as to such dangers by said Wolters or anyone else. That said Wolters knew said Hans was inexperienced, but gave him no caution, nor did he or his agent direct him, said Werner, how to perform said work without injury. That while so acting under such direction and control of defendants, and performing the labor requested of him, the left hand and arm of said Hans was caught in the gin-saws and so crushed, cut, and wounded as that it had to be amputated. That plaintiff had the services of skillful physicians, but amputation was necessary. That such injuries were occasioned by the act of defendants and their agents, in putting said Hans to perform such dangerous work, contrary to said contract, and without giving him any warning or caution as to the dangers attending same and directing him how to avoid such dangers.

Defendants answered by general denial, plea of contributory negligence, and averred that Hans Werner was at the time of the accident a mere volunteer, and was not directed to do the work by any one authorized to do so.

The firm of Trautwein & Wolters was composed of William Trautwein, Louis Trautwein, and Edwin Wolters, and they were engaged in operating a cotton gin and cotton presses, or baling apparatus, in connection therewith. All the cotton gins were in the same building and on the same floor, but those connected with the round bale presses were on

the opposite side of the room from those connected with the square bale presses. On the occasion in question one Gabitsch was in charge of the four-square bale gins, and it was his duty to attend to them, keep them in running order and proper repair, and to prevent injury to them, and in doing these things to use his own judgment and discretion, but it was not shown that he was authorized to hire assistance, or to call anyone to his assistance, and he had never done so prior to the time in question. On the 22d day of August, 1898, Hans Werner was hired by the firm to mark, weigh, count, assort, and separate the bales of cotton ginnned and pressed at the round bale press of defendants. The contract of hire was made with appellant, the father of the minor, the latter being at that time about 16 years old. There was evidence tending to show that by the contract of hire defendants agreed not to put Hans to work about dangerous machinery, and that appellant told Wolters, the partner who made the contract of employment, that Hans knew nothing about gins, but would soon learn; but upon this point the evidence was conflicting.

In pursuance of the contract of hire, Wolters, who was in charge and had actual control and management of the ginning plant and gave it his daily personal superintendence, placed Hans at work at the round bale press to mark, weigh, count, assort, and separate the bales coming from the last named press. He worked in this way about two months prior to the accident, and during that period was never at any time directed by Wolters or any other person to do any other kind of work. At times when there was no work of that kind to do, he and other employes about the plant were in the habit of strolling over the building. On the occasion in question he was not on duty, and was standing or walking along the space between the round bale gin stands and the square bale gin stands. His master, Wolters, who was giving the business his personal attention, came up stairs on the floor where Hans was, and near to him, when one of the square bale gins became "choked," and Gabitsch, who was in charge of it, called to him to assist him in cleaning it. This was a very dangerous task for one who did not understand the proper way to do it. He promptly responded to the call, and he and Gabitsch undertook to clean it. In doing so Hans got his hand caught in the gin saws, and it was so injured as to necessitate amputation.

It was shown beyond dispute that Wolters was in a few feet of Gabitsch and of Hans when Gabitsch called, but Wolters was not looking at Hans or Gabitsch, and he says he did not hear the call nor see Hans go to the assistance of Gabitsch. He admits, however, that when he was about nine feet distant he heard the gin "jumping," and looking around saw Gabitsch and Hans sitting down cleaning the gin, and that in a moment Hans screamed, and he assisted Gabitsch in carrying Hans to the platform. He accounts for his failure to hear the call by the noise of the machinery, which was at that time in full motion, and he is not disputed upon this point.

The evidence is conflicting as to whether Hans had been theretofore warned of the danger attendant upon the operation of gin stands, but it was not disputed that at the time of the accident no warning was given him, nor explanation made as to how the work might be safely done. Gabitsch had never been told whether he could or not call other employes to his assistance, but was not authorized to do so and had never undertaken to do so before. It was shown without dispute that the gin stand could have been easily stopped before undertaking to clean it, and that that was the safe and proper way to do it. It was also shown without contradiction that it was necessary to clean the gin stand at once to prevent serious injury to the machinery. Both Gabitsch and Hans knew of the proximity of Wolters, but neithr called to him or said anything to him until the accident had occurred. Hans had not been directly told that he should engage in no other work but that about the round bale press, but he had been assigned no other task, and had no reason to believe that he would be required to do any other work. He testified that when Gabitsch called him he thought Gabitsch was authorized to do so, and believed it was his duty to respond. It was also shown that all the hands about the plant received the same wages, viz., $1.50 per day. That they were all in the same grade of employment, and that Wolters was personally present and was exercising personal supervision and control.

Appellant urges many assignments of error; some of which should be sustained, and if there is any evidence which, in the absence of opposing proof, would authorize a recovery, the judgment must be reversed.

Appellant bases his right of recovery upon two grounds: (1) That the minor was inexperienced; that appellees knew it and placed him at work at a dangerous task without first warning him of the danger and advising him how the task might be safely done. (2) That if Wolters did not direct him to do such work without previously warning him, then that Gabitsch put him to work at the task with actual and apparent authority to do so.

We are of opinion that the evidence shows without contradiction that Wolters did not order Hans to assist Gabitsch nor did he know of, assent to, or acquiesce in the act of Gabitsch in calling him. The right to recover must then depend upon the authority of Gabitsch to call other employes to his assistance. The evidence is uncontradicted that he was clothed with no such general power, and it is conceded that he had never before undertaken to exercise such right even in an emergency. But appellant contends that inasmuch as Gabitsch was intrusted with the operation, care, and safety of the gin stand in question, he had the implied authority to call assistance in an emergency involving the safety of the machinery in his charge, and that, as the proof shows the machinery was in jeopardy, he acted within his authority in enlisting the assistance of Hans, and the master is therefore bound by his acts. In support of this contention the case of Fox v. Railway, 17 Lawyer's Reports, Annotated, 289, is cited. In that case the conductor of a train

employed Fox to take the place of a brakeman who was temporarily and unexpectedly called away. The court held that in such an emergency, while making a trip, the right to supply the place of an absent member of his crew was within his general powers as a conductor in charge of a train and charged with its safe operation. But the court did not go to the length of holding that even an agent with such general powers as a conductor, would have such authority if the master was present and in control, nor have we been cited to any authority so holding. Section 481, Mechem on Agency, cited by appellant, treats of the duty of the agent as between himself and his principal, and lays down the rule that an agent, charged with the performance of a duty in a particular way may in an emergency which precludes consultation with his principal, depart from his instructions, and if he does so in good faith and in the exercise of sound discretion, he incurs no liability to his principal for violating instructions. The rule announced does not cover the question here presented.

In Railway v. Skinner, 4 Texas Civil Appeals, 661, a minor employed by the company as a telegraph messenger boy was sent for the mail. In going to the postoffice he rode upon cars which were being switched in that direction. The foreman of the switch crew directed him to uncouple two cars, and in doing so he was injured. He was held in thus engaging in work other than that which he was employed to do to be a mere volunteer and not entitled to recover. The case was distinguished from Railway v. Eason, 65 Texas, 577, where it was held that one assisting at the request of the agent of the railway, but who was at the same time furthering his own private business, could recover for injuries resulting from the negligence of the servants of the railway company.

In Mayton v. Railway, 63 Texas, 77, the rule is recognized that in order to recover in a case of this nature the facts must show that the act of the servant in calling assistance was the act of the master. Appellant seeks to recover in this case on that theory alone. There is no allegation that the master was negligent in permitting an inexperienced minor to wander about in proximity to dangerous machinery, nor is a recovery sought upon that ground. The case of White v. Waterworks Company, 9 Texas Civil Appeals, 473, and kindred cases cited by appellant, have no application here.

Conceding that appellees contracted with appellant that they would not put the minor to work about dangerous machinery, but would assign him to work at the round bale press, the undisputed facts show that appellees assigned him to the work agreed upon, and he had performed the duties assigned him for two months without being once called to work elswhere. It has been seen that Gabitsch was a servant charged with particular duties, just as Hans was, and was without control over other servants. With no power to employ assistance, no single fact is shown which would have authorized Hans to believe that Gabitsch was clothed with such power. On the other hand, he had never seen such authority exercised by any employe, and he knew that all the work was

being conducted under the personal supervision of the master. The fact that he had responded to the call of Gabitsch was not brought to the attention of Wolters until the instant before his injury, and it is not contended that there was then time to prevent the injury by a warning from the master.

Some evidence was adduced as to the failure of the master to publish rules for the safe operation of the plant, but such failure is not made one of the grounds of recovery. The minor was off duty at the time of the accident. He voluntarily assisted Gabitsch, who had no power either real or apparent to bind the master, and the minor was in no better position than a stranger in responding to the request. To hold that the master should forsee such an event would impose upon him the duty to instruct every servant in his employ, not only as to the dangers incident to their own tasks, but as to every other piece of machinery about the plant, a duty clearly not imposed by law.

We are of opinion that the facts proven do not show a cause of action as the pleadings stand, and that notwithstanding the erroneous charges complained of, the judgment should be affirmed.

*Affirmed.*

### ON MOTION TO CORRECT FINDINGS OF FACT.

In the main opinion we found that both Gabitsch and Hans Werner knew that Wolters was near by when Hans was called to assist in cleaning the gin. We were led to so find because of the statement of Hans that Wolters was in a few feet of him at the time, and by the statement of Gabitsch that he had seen Wolters come upon that floor only a short while before. A closer examination of the entire testimony of Gabitsch leads us to conclude that there is a conflict in the evidence as to whether Gabitsch knew of the proximity of Wolters at the time he called for Hans, and we now find that the evidence is conflicting upon the point.

The change does not alter the conclusion heretofore reached by us, and we are unable to see in what respect the appellant's rights on writ of error would have been prejudiced by the inaccuracy, but for the sake of accuracy and in response to the prayer of appellant we make the correction.

Our findings are assailed in other respects, but we think they are correct, and the motion, except to the extent indicated, is overruled.

Writ of error refused.