# EL PASO LAUNDRY CO., Inc., v. GONZALES.

## No. 2464.

Court of Civil Appeals of Texas. El Paso. March 12, 1931.

Rehearing Denied April 2, 1931.

Lea, McGrady, Thomason & Edwards, of El Paso, for appellant.

Charles Owen and Henry T. Moore, both of El Paso, for appellee.

PELPHREY, C. J.

This is an appeal from a judgment for damages for personal injuries to Pedro Gonzales, Jr., the sum of $1,500 being awarded to appellee as next friend of Pedro Gonzales, Jr., and $1,136.50 being awarded to appellee for loss of services and medical expenses.

Appellee, Pedro Gonzales, Sr., alleged that on or about July 9, 1929, he was an employee of appellant, who was conducting a laundry business in the city of El Paso, Tex.; that for more than two years prior to said date it had been the custom of his son, Pedro Gonzales, Jr., to come upon the premises of appellant for the purpose of bringing appellee his lunch at noon and his supper in the evening and for

794

the purpose of assisting appellee in the performance of his work and duties for appellant; that during times when Pedro, Jr., was attending school, it had been his custom to come upon the premises after school for the purpose of assisting his father in his work; that such conduct and custom of Pedro, Jr., was well known to appellant and its officers and agents long prior to July 9, 1929; that appellant and its officers and agents had confirmed, acquiesced in, approved, and allowed such custom and conduct of Pedro, Jr., without objection; that such conduct and custom was to the interest and accrued to the benefit of appellant and its employees; that appellant's long acquiescence therein constituted and was an invitation to Pedro, Jr., to come upon the premises, and that by virtue thereof appellant owed Pedro, Jr., the duty not to willfully and wantonly injure him and also to use ordinary care for his safety and protection; that on or about the date above mentioned, while Pedro, Jr., was on the premises of appellant for the purpose of bringing Pedro, Sr., his lunch and assisting him with his work, one of appellant's employees negligently, recklessly, and carelessly opened one of appellant's machines known as an "extractor," while it was in operation and while Pedro, Jr., was in close proximity thereto; that Pedro, Jr., in attempting to move away from the machine slipped on a spot covered with oil and fell into the uncovered machine, crushing his right arm to such an extent as necessitated its amputation between the elbow and shoulder; that the machine was defective and dangerous, in that it leaked great quantities of oil onto the cement floor, thereby causing it to be unusually slippery; that this condition was known to appellant, its officers and employees, for a period of time prior to the date alleged; and that appellant's employee, knowing of the slippery condition of the floor, recklessly, carelessly, and negligently uncovered the machine without warning Pedro, Jr., of his intention and without affording Pedro, Jr., an opportunity to move from the position of danger.

Appellant filed a general demurrer and general denial, and further pleaded assumed risk on the part of Pedro, Sr.; that, under the facts and circumstances surrounding his presence on the premises, Pedro, Jr., was an employee of appellant and must recover, if at all, under the Compensation Act; and that Pedro, Jr., was guilty of contributory negligence.

The jury, in answer to special issues, found that it was negligence for appellant's employee to open the extractor while it was in motion and while Pedro, Jr., was standing where he was; that such negligence was a proximate cause of the injury; that Pedro, Jr., was not an employee of appellant at the time of the injury; that Pedro, Jr., did not put his hand into the extractor voluntarily or negligently; that he was not negligent in being where he was at the time of the accident; and that Pedro, Sr., was not negligent in permitting Pedro, Jr., to be where he was at the time of the accident.

## Opinion.

Appellant contends that the court should have instructed a verdict in its favor because: (1) That the evidence showing that Pedro, Jr., was familiar with the method of operation and the attendant danger, and having been instructed how to avoid it, and that appellant's servant having requested him to get back from the machine before it was opened, in the absence of any circumstances suggesting an impending accident, was not guilty of negligence; (2) that if such opening of the machine was negligent, it was not the proximate cause of the injury; (3) that the evidence showing that Pedro, Jr., was on the premises, in the care and custody of Pedro, Sr., acting under his direct instructions, his presence being merely tolerated by the officers of appellant, Pedro, Sr., having introduced his son to the dangers, which he knew to exist, was alone responsible for the resulting injury; (4) that, under the facts, Pedro, Jr., was only a volunteer and as such could not recover; and (5) that, if not a volunteer, he was then an employee and must recover under the Workmen's Compensation Act (Vernon's Ann. Civ. St. art. 8306 et seq.); and that the court erred in submitting any ground of recovery on the part of Pedro, Sr., because, with full knowledge of the dangers, he carried his son into the workroom and, as far as his rights were concerned, assumed the risk of injury to him.

■■ The first question which we will consider is as to the status of Pedro, Jr., on the premises. If he was, as contended by appellant, a mere volunteer there, he could not recover for an injury resulting from the negligence of an employee of appellant. Mayton v. Railway, 63 Tex. 77, 51 Am. Rep. 637; Bonner & Eddy v. Bryant, 79 Tex. 540, 15 S. W. 491, 23 Am. St. Rep. 361. But if, as argued by appellee, he was an invitee, then appellant owed him the duty of exercising reasonable or ordinary care for his safety and would be liable for a breach of such duty. 45 C. J. pp. 823, 824; Texas & P. Ry. Co. v. Brown, 11 Tex. Civ. App. 503, 33 S. W. 146; Waters-Pierce Oil Co. v. Snell, 47 Tex. Civ. App. 413, 106 S. W. 170 (writ denied); Flippen-Prather Realty Co. v. Mather (Tex. Civ. App.) 207 S. W. 121; Moreman Gin Co. v. Brown (Tex. Civ. App.) 291 S. W. 946.

Appellant makes the further contention that Pedro, Jr., was, at the time of the injury, its employee and must recover, if at all, under the provisions of the Compensation Act.

■■ The relation of master and servant exists whenever the employer retains the

right to direct the manner in which the business shall be done, as well as the result to be accomplished, or, in other words, not only what shall be done, but how it shall be done. Inasmuch as the right to control involves the power to discharge, the existence of the power to discharge is essential, and is an indicium of the relation. 39 C. J. pp. 35, 36, and authorities cited:

■■ Whether the relation exists is a question of fact, and in the present case we have a jury finding to the effect that it did not exist.

Such finding is amply supported by the evidence and is conclusive.

Pedro, Sr., Pedro, Jr., and the witness Dunn all testified that for a period of about one year, Pedro, Jr., had been helping his father with his work, and that Crawford Harvie, James Harvie, and Mr. Debruhl, appellant's superintendent, had seen him working there.

These three persons were all used as witnesses by appellant, and none of them denied the fact that they had seen the boy there; while Crawford Harvie's testimony shows that he knew the boy was there and that he, as general manager, did not have him under his direction and control.

It is therefore uncontroverted that for a period of about one year before he was injured, Pedro, Jr., was, with the knowledge of appellant's officers, assisting his father with his work.

■ Ordinarily mere acquiescence in, or toleration of, an entry into or use of premises does not give to the person so entering the status of an invitee, but the rule is different where the owner or occupant has a beneficial interest in the purposes for which the premises are used. In the case of Bustillos v. Southwestern Portland Cement Company, 211 S. W. 929, 931, Section A of the Commission of Appeals, in reversing a decision of this court (169 S. W. 638), held that a boy who was permitted to come to the cement plant each day for the purpose of bringing a lunch to one of the owner's employees was an invitee and that the owner owed him the duty of exercising ordinary care for his safety. The court, as a basis for its holding, has this to say:

"The errand of deceased was not only for a purpose connected with the business in which defendant was engaged, but it was in the interest and for the benefit of defendant through a necessary service to one of its employees. The defendant permitted deceased and other children to come upon its premises and knew they traveled the narrow path bordering the pit. The slightest regard for their safety would have suggested the danger in passing so near a pit beneath the surface of which was concealed a burning mass into which they might accidentally slip and fall.

Under the facts alleged in the petition, defendant will not be permitted to say that deceased was a mere licensee to whom it owed no duty and for whose safety it was under no obligation to make provision."

■ In the case at bar, Pedro, Jr., not only brought meals to his father, but had frequently over a period of about a year assisted his father in doing the work of appellant. This was a benefit to appellant, and we are of the opinion that appellant, after having knowledge of the facts and having acquiesced in the presence of Pedro, Jr., and having accepted the benefits of his labor, cannot now be heard to say that he was only a volunteer.

If we are correct in holding that under the facts here Pedro, Jr., was an invitee, then did appellant fail in its duty to him as such? Jose Montelongo's testimony, which is the most favorable to appellant, was as follows:

"Pedro was leaning against the machine when I went to open it up. My idea in opening the machine was to stop it. I didn't make any use of the brake on it, nothing at all, just raised the lid. I shut off the power. Pedro was leaning against the machine and I told him, when I got there, to get away from there, I was going to open it. He got away, he raised his arms from the machine. I didn't notice whether he stepped back from the machine, I noticed he took his hands off the machine. Then I turned the other way and went to stop another machine next to this one. I was over at the other machine when he was hurt. I did not actually see him when he got his hand in the machine. When you turn the power off of the machines, the machine doesn't stop running right away, it just runs slower. It will gradually slow down until it stops. It will run two or three minutes, it just depends on how it has been running before. The machine has just one speed. When I came up to this machine, the boy was standing there leaning on it, like this (with arms folded); I told him to get away and at that time I opened the lid and went to the other place. It cuts the power off automatically when you raise the lid. The turning back of the lid will turn the power off. (Referring to Ex. 1.) There is a lever back here you can stop it with without raising the lid, either way will stop it. * * * On this occasion I didn't cut the power off before the lifting the lid, I lifted the lid and expected that to cut the power off the machine. Just as I lifted the lid, I turned to walk away, and almost immediately, I heard the boy holler. * * * At that time that machine was leaking oil around the bottom because it was burning up all the time. It would get hot and they would have to use a good deal of oil on it. The oil would run out on the floor and mix with the water on the floor. When it would mix with the water and soap it would make the floor pretty slippery."

Pedro, Jr. testified:

"As to just how the accident happened,—well, I was leaning on the machine where I was working with my elbows like this (Illustrating), but it was closed, and then when I was standing there Mr. Montelongo came and told me in Spanish 'quitese,' but he didn't give me time to get away, he just opened it and I started to walk and I slipped down because there was oil on the floor. I got into the machine when I slipped down. * * * My arm got in the machine, I don't know how. There was oil on the floor there, a big spot around. There was also water and soap there. Mr. Montelongo saw me standing there when he opened the machine and he said 'quitese.' That means to get away. He didn't wait until I got away, he just opened the machine. He opened the machine before I got away. He did not stop the machine first, it was still running. He just told me to get away, and I started to walk and slipped down and my arm got in the machine. * * * My arm was cut off right there, just below the shoulder."

The testimony of Debruhl shows that the machine in which Pedro, Jr., was injured consisted of an outside curb and inside or revolving, perforated basket which revolves at a speed of from 1,000 to 1,200 revolutions per minute, and that the wet clothes are placed in the basket and the water is taken out of them by centrifugal force.

 These facts, we think, constitute negligence, and if the opening of the extractor top was, under the circumstances, the proximate cause of the injury, then appellant would be liable.

Appellant contends that Montelongo, when he opened the top of the extractor, could not have foreseen that the boy would slip and fall into it and thereby be injured.

There has been much discussion by the courts of this state of the question of proximate cause, but most of the divergence of opinion has occurred by reason of the application of the rule to the peculiar facts under consideration, and the same appears to be true as to the determination of the character of an intervening act which will break the causal connection between the original wrongful act and the subsequent injury.

Without attempting to particularly discuss the many decisions on these questions, we have reached the conclusion that the evidence here is sufficient to show that Montelongo, when he opened the top of the extractor, contrary to the rule against so doing, with the boy standing in such close proximity to the machine, and the floor being slippery on account of the oil, soap and water, should have foreseen that the injury which did result, or some injury of a like character, would result from his act.

Therefore, the jury's finding that such act was negligence and the proximate cause of the injury was correct.

We cannot agree with appellant's proposition that the father, by taking the boy on the premises with full knowledge of the dangers, thereby assumed the risk of injury to him; nor do the cases of Blossom Oil Co. v. Poteet, 104 Tex. 230, 136 S. W. 432, 35 L. R. A. (N. S.) 449, and Magnolia Co. v. Porter (Tex. Civ. App.) 22 S.W.(2d) 695, support such contention.

In those cases the fathers were the sole representatives of the defendants on the premises and were in an entirely different position from that occupied by Pedro, Sr., here.

Finding no reversible error, the judgment is affirmed.